UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00081-CHB

ROBIN P.,
*on behalf of B.R.C.*                                                                          PLAINTIFF


VS.


KILOLO KIJAKAZI, *Acting*
*Commissioner of Social Security*                                               DEFENDANT

## REPORT AND RECOMMENDATION

Robin P., on behalf of her minor son, B.R.C., appeals from the final determination of the

Commissioner of Social Security denying his application for supplemental security income

benefits. (DN 1). Both Claimant and the Commissioner have filed a Fact and Law Summary (DN

15; DN 21). Claimant has also filed a reply brief. (DN 22). The District Judge has referred the case

to the undersigned United States Magistrate Judge for consideration and preparation of a Report

and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 12).

## I. Findings of Fact

Robin P. applied for supplemental security benefits under Title XVI of the Social Security

Act on behalf of her son, B.R.C. ("Claimant"), on February 3, 2020.[1] (Transcript ("Tr.") 186-93).

The application alleges Claimant's disability began on November 6, 2018 (Tr. 187) and claims

disability due to autism, sensory disorder, obsessive compulsive disorder, attention deficit

---

[1] There is some discrepancy in the record as to Claimant's protective filing date. His application states that he applied for SSI benefits on February 3, 2020. (Tr. 186-93). But the Disability Determination Explanation at the initial level of review stated Claimant filed the initial claim for disability on January 29, 2020. (Tr. 59). The ALJ's decision also indicates Claimant's protective filing date was January 29, 2020. (Tr. 19). This discrepancy does not affect any analysis provided in this Report and Recommendation.

hyperactivity disorder, and bipolar disorder (Tr. 49-50). Claimant's application was denied at the initial and reconsideration levels. (Tr. 68, 80).

At Claimant's request, Administrative Law Judge D. Lyndell Pickett ("ALJ Pickett") conducted a hearing in Louisville, Kentucky on April 20, 2021. (Tr. 45). Claimant's mother appeared by telephone, but Claimant did not participate. (*Id.*). After a brief discussion with ALJ Pickett, Claimant's mother requested the hearing be postponed so she could find legal representation. (Tr. 45-46).

ALJ Pickett reconvened the hearing on November 1, 2021. (Tr. 30). Claimant, Claimant's mother, and a non-attorney representative all appeared by telephone. (Tr. 32). During the hearing, Claimant's mother testified to the following. Her son is 12 years old and in the seventh grade. (Tr. 34). This school year has been challenging because of switching from virtual learning back to in-person learning, and Claimant has had outbursts in reaction to commotion and loud noise at school. (Tr. 35). Claimant has an Individual Education Plan ("IEP") in place that the school recently revised to say that he cannot focus or stay on task for 80% of the day. (*Id.*). Claimant recently had a violent outburst at school and supposedly threatened another student. (Tr. 38). His mother feels like Claimant's prescribed medications are no longer working. (Tr. 36). Claimant, for the most part, does not complete any daily chores. (Tr. 38). To occupy his time, Claimant plays sports and plays video games, but only for a short period due to his low attention span. (Tr. 39). Claimant can make friends but has trouble keeping them because he doesn't know how to behave around other kids. (Tr. 40).

ALJ Pickett issued an unfavorable decision on December 16, 2021. (Tr. 19-25). He applied the Commissioner's three-step sequential evaluation process for determining whether claimants under the age of 18 are disabled as identified in 20 C.F.R. § 416.924(a). (*See* Tr. 19). The first step

asks whether the claimant is engaged in substantial gainful activity, defined as work that involves significant physical or mental activities that is done for pay or profit. 20 C.F.R. §§ 416.924; 404.1572. The second step asks if the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924. And step three reviews whether the claimant has an impairment(s) that meets, medically equals, or functionally equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.*; 20 C.F.R. §§ 416.925, 416.926.

ALJ Pickett first found Claimant had not engaged in substantial gainful activity since his application date. (Tr. 20). ALJ Pickett next determined Claimant had the severe impairments of attention deficit hyperactivity disorder and autism. (*Id.*). Third, ALJ Pickett found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). Because Claimant's impairments did not meet or medically equal a listed impairment, the ALJ proceeded to address whether Claimant had an impairment or impairments that functionally equaled the severity of the listings. (Tr. 21). ALJ Pickett found he did not. (*Id.*). Based on these findings, ALJ Pickett concluded Claimant had not been disabled, as defined in the Social Security Act, since January 29, 2020, his application date. (Tr. 24).

Claimant appealed ALJ Pickett's decision. (Tr. 175). The Appeals Council declined review, finding no basis for changing the ALJ's decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges evaluate child disability claims by undertaking the three-step sequential evaluation process mandated by the regulations. 20 C.F.R. §§ 416.924. When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the

case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant challenges ALJ Pickett's Step Three finding that he does not have an impairment or combination of impairments that functionally equals the severity of a listed impairment. (DN 15-1, at PageID # 538). In deciding whether a claimant's impairment(s) functionally equals the severity of a listing, the ALJ analyzes the child's degree of limitation caused by the impairment in six broad domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment(s) is of listing-level severity if the child has marked limitations in two of the domains listed above or an extreme limitation in one of the domains listed above. *Id.* at § 416.926a(a). A "marked" limitation results if the child's impairment(s) "interferes seriously with [his] ability to

independently initiate, sustain, or complete activities." *Id.* at 416.926a(e)(2)(i). Whereas "extreme"

limitations exist when a child's impairment(s) "interferes *very* seriously with [his] ability to

independently initiate, sustain, or complete activities." *Id.* at 416.926a(e)(3)(i) (emphasis added).

Here, ALJ Pickett found Claimant has marked limitation in the functional domain of

"attending and completing tasks[.]" (Tr. 22). But he found Claimant has less than a marked

limitation in the domains of "acquiring and using information[,]" "interacting and relating to

others[,]" and "the ability to care for himself[.]" (*Id.*). And he determined Claimant had no

limitation in "moving about or manipulating objects" or "health and physical well-being." (*Id.*).

Claimant argues ALJ Pickett failed to adequately explain why he found Claimant has less

than marked limitation in the domain of interacting and relating with others. (DN 15-1, at PageID

# 538). The record, Claimant submits, is replete with evidence of his social difficulties, problems

reading social cues, and restrictions in responding to basic indicators that allow for a minimum

level of interaction with peers and other people. (*Id.* at PageID # 539 (citing Tr. 35-36, 40, 239,

286, 298, 408-09, 412, 440, 457)). Claimant alleges ALJ Pickett cherry-picked isolated records

suggesting normalcy from the record but failed to address clinical observations, test results, lay

opinions, and testimony, which document his marked restriction in interacting with others. (*Id.* at

PageID # 540-42).

ALJ Pickett further erred, according to Claimant, by not resolving the contradiction in

finding the opinion of Ms. Royse, Claimant's fifth grade teacher, persuasive, but then seemingly

rejecting her opinion that Claimant is affected by extreme limitations in persisting at a reasonable

pace without distracting himself and others. (*Id.* at PageID # 543).  Claimant concludes that ALJ

Pickett's error in finding less than marked limitation in Claimant's ability to interact and relate to

others cannot be harmless because if he had properly found marked limitation in this category, he

would have found Claimant's impairments were functionally equivalent to the severity of the listings. (*Id.* at PageID # 544).

The Commissioner argues Claimant's evidence about the ALJ's alleged cherry-picking "cuts both ways" because Claimant too cites only evidence in support of her claim. (DN 21, at PageID # 561-62). Even so, the Commissioner claims ALJ Pickett fairly considered and weighed the evidence related to Claimant's ability to interact and relate to others, including evidence both favorable and unfavorable to Claimant. (*Id.*). As for ALJ Pickett's analysis of Ms. Royse's opinion, the Commissioner explains her opinion does not indicate Claimant has an obvious, serious, or very serious problem in any area of interacting and relating to others and, therefore, he appropriately found the opinion persuasive. (*Id.* at PageID # 563). Because substantial evidence supports ALJ Pickett's opinion, the Commissioner requests it be affirmed. (*Id.* at PageID # 564-65).

In reply, Claimant asserts the Commissioner improperly relies on *DeLong v. Comm'r*, 748 F.3d 723, 726 (6th Cir. 2014) to challenge her assertion regarding ALJ Pickett's cherry picking of evidence, because *DeLong* was an Equal Access to Justice Act case with a different standard for remand. (DN 22, at PageID # 567-68). Claimant clarifies that a reviewing court may review and consider both records cited and not cited by an ALJ to determine whether the ALJ improperly relied on selective citations to the record and that doing so is not impermissibly weighing the evidence. (*Id.* at PageID # 568-69).

A claimant's ability to interact and relate with others refers to "how well [the claimant] initiates and sustains emotional connections with others, develops and uses the language of [his] community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." 20 C.F.R. § 416.926a(i). For school age children (aged 6-12), this includes:

> Be[ing] able to develop more lasting friendships with children who are your age.
> You should begin to understand how to work in groups to create projects and solve
> problems. You should have an increasing ability to understand another's point of
> view and to tolerate differences. You should be well able to talk to people of all
> ages, to share ideas, tell stories, and to speak in a manner that both familiar and
> unfamiliar listeners readily understand.

*Id.* at (i)(2)(iv). For adolescents (aged 12-18), this includes:

> Be[ing] able to initiate and develop friendships with children who are your age and
> to relate appropriately to other children and adults, both individually and in groups.
> You should begin to be able to solve conflicts between yourself and peers or family
> members or adults outside of your family. You should recognize that there are
> different social rules for you and your friends and for acquaintances or adults. You
> should be able to intelligibly express your feelings, ask for assistance in getting
> your needs met, seek information, describe events, and tell stories, in all kinds of
> environments (e.g., home, classroom, sports, extra-curricular activities, or part-time
> job), and with all types of people (e.g., parents, siblings, friends, classmates,
> teachers, employers, and strangers).

*Id.* at (i)(2)(v).[2] Examples of limited functioning in this domain include lacking close friends or any friends of the same age; avoiding or withdrawing from familiar people or being "overly anxious or fearful of meeting new people or trying new experiences"; having difficulty playing sports or games with rules; and having difficulty communicating with others. *Id.* at (i)(3).

In determining whether Claimant's limitations met or medically equaled the severity of any Listing, ALJ Pickett discussed Claimant's ability to interact with others, finding he had moderate limitations:

> He can be disrespectful and he does not respect personal space, but he is often
> helpful to others. However, he can work in a group or with a partner 75% of the
> time without conflict. He spends time with family and friends. He goes to church
> and plays sports. He is cooperative on examination. He is having trouble getting
> back into in-person classes from virtual classes. He has outbursts. He has his own
> playtime. He sometimes plays basketball. He has trouble making and keeping
> friends (Exhibits 1F, 2F, 4F, 5F, 6F, 7F, 9F, 10F & 11F; Testimony).

---

[2] Claimant was twelve years old at the time of his administrative hearing. The regulations classify school-age children as age 6 to attainment of age 12 and adolescents as age 12 to attainment of age 18. 20 C.F.R. § 416.926a(i)(2)(iv), (v). Claimant falls into both age group descriptors since he filed his claim for disability when he was a "school-age" child but transitioned into the "adolescent" category while awaiting his decision in the case. ALJ Pickett did not mention age-group descriptors in his decision.

(Tr. 21). Later, in assessing the functional equivalence of Claimant's limitations, ALJ Pickett did not individually address each of the six domains but instead evaluated the domains contemporaneously. (Tr. 22-24).

After review, the Court finds the evidence ALJ Pickett considered as relevant to the functional domain of interacting and relating to others largely mirrors the evidence he considered in evaluating Claimant's ability to interact with others pursuant to the listings. From Claimant's mother's testimony, ALJ Pickett noted Claimant is still getting used to being around other students after returning to in-person learning; he is having outbursts, he has his own private play time away from anyone else; he is not able to handle commotion in the gym; he had a violent outburst recently where he threatened some other children; he is able to play with another child who is on his level; he has a hard time making and keeping friends; he does not know how to behave around others; other children find him strange or weird; he does not currently participate in extracurricular activities; he used to play football. (Tr. 23). Additionally, ALJ Pickett discussed Claimant's diagnosis of autism and reported symptoms of inappropriate social behaviors, anger, irritability, and impulsivity. (*Id.*). ALJ Pickett further mentioned that Claimant "can be disrespectful, and he does not respect personal space, but he is often helpful to others. However, he can work in a group or with a partner 75% without conflict of the time. He spends time with family and friends. He goes to church and plays sports. He is cooperative on examination." (Tr. 24 (citing Exs. 1E, 2E, 13E, 1F-11F)).

An ALJ is not required to explicitly mention or discuss every piece of evidence or to show precisely how each piece of evidence was considered. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (per curiam); *Logsdon v. Kijakazi*, No. 1:20-CV-00177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022). But the ALJ "may not ignore evidence that does not

support his decision, especially when that evidence, if accepted, would change his analysis[,]"
*Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) (add'l citation omitted)). Even where there is enough evidence to support an ALJ's decision, the Court cannot uphold the decision if "the reasons given by [the ALJ] do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004)).

Contrary to Claimant's suggestion, ALJ Pickett did not impermissibly cherry-pick evidence and did not fail to create a logical bridge between the evidence and his conclusion. He considered evidence both favorable and unfavorable to Claimant's functional ability to interact and relate to others. Though he did not articulate every piece of evidence in the record, he indicated he considered all of the relevant evidence in the case record, including objective medical evidence, information from other sources (school teachers, family members), the claimant's statements (including statements from his parents) and all other relevant evidence in the case record. (Tr. 22). After summarizing the relevant evidence, ALJ Pickett comprehensively cited to the medical exhibits of record. (*See* Tr. 23-24 (citing Exs. 1E, 2E, 13E, 1F-11F)).

The evidence ALJ Pickett discussed in evaluating Claimant's functional domains is representative of the evidence in the record as a whole. The Court has reviewed the records Claimant alleges ALJ Pickett ignored and does not find that explicitly recounting such evidence would have changed his analysis. For instance, Claimant highlights ALJ Pickett's failure to discuss Claimant's mother's testimony that Claimant hid under his desk at school and hid in a ditch during outdoor time. ALJ Pickett, however, echoed the gist of these statements by recounting Claimant's

mother's testimony that Claimant is getting used to being around other students, has his own private play time away from others, cannot handle commotion, does not know how to behave around others, has a hard time making and keeping friends, and other children find him strange or weird. (Tr. 23). Similarly, Claimant points to evidence from Ms. Royse stating he doesn't have strong friendships, testing by Dr. Whitten revealing that Claimant struggles to understand the actions of others in a social context, and school reports reflecting his difficulty initiating, engaging in, and maintaining social contact and limited capacity for engaging in activities that develop and maintain relationships with other children. (Tr. 412). Yet ALJ Pickett addressed much of this evidence when noting Claimant's diagnosis of autism, reports of impulsivity, anger, irritability, aggression, and inappropriate social behaviors. (Tr. 23). ALJ Pickett also specifically noted his consideration of Ms. Royse's report (Tr. 24) and cited to Dr. Whitten's psychological report and other psychoeducational reports after summarizing the evidence of the record (Tr. 23-24 (citing Ex. 1F, 5F)). Accordingly, ALJ Pickett did not cherry-pick isolated records suggesting normalcy but, instead, considered the entire record in forming his conclusions.

Nor does the Court find ALJ Pickett failed to construct an accurate and logical bridge between the evidence and his conclusions. The ALJ's decision demonstrates he considered the objective and subjective evidence, along with the medical opinions, in determining Claimant had less than marked limitation in the functional domain of interacting and relating to others. The evidence demonstrates, as ALJ Pickett concludes, that some limitation exists in this domain but that this limitation does not rise to the level of marked pursuant to the regulations. The ALJ's findings are sufficient to permit meaningful review and inform the Claimant of the reasons supporting his claim denial. Most critically, as discussed in detail above, ALJ Pickett's analysis is supported by substantial evidence in the record. It matters not that some evidence in the record

could support an alternate conclusion.

The Court now turns to Claimant's issue with ALJ Pickett's evaluation of Ms. Royse's opinion. ALJ Pickett noted how Ms. Royse, Claimant's fifth-grade teacher, opined Claimant has slight to serious problems in acquiring and using information, slight to very serious problems in attending and completing tasks, slight problem in interacting and relating with others, no problem in moving about and manipulating objects, slight to serious problem in caring for himself, and no limitation in health and physical wellbeing. (Tr. 24 (citing Ex. 6E)). Finding this opinion, "persuasive," ALJ Pickett noted it was supported by and consistent with the medical and other evidence of record. (Tr. 24). Nevertheless, ALJ Pickett indicated that additional evidence showed Claimant was more limited than Mr. Royse opined and added further limitation to his residual functional capacity assessment. (*Id.*).

Claimant argues a discrepancy exists between ALJ Pickett finding Ms. Royse's opinion persuasive and his rejection of the portion of her opinion finding Claimant's ability to interact with others is affected by extreme limitations in persisting at a reasonable pace without distracting himself or others. (DN 15-1, at PageID # 542-43). The Commissioner submits Claimant's argument is undeveloped and unclear. (DN 21, at PageID # 563, n. 1). The Court agrees.

It appears Claimant is conflating restrictions from two separate sections of Ms. Royse's opinion to manufacture a discrepancy. In Section II, which assessed Claimant's ability to attend and complete tasks, Ms. Royse found Claimant had "a very serious problem" in four categories: focusing long enough to finish assigned activities or tasks; organizing his own things or school materials; working without distracting himself or others; and working at a reasonable pace/finishing on time. (Tr. 239). Whereas, in Section III, which evaluated Claimant's ability to interact and relate with others, Ms. Royse did not find Claimant had any obvious, serious, or very

11

serious problems and only found "slight problem" in Claimant's ability to play cooperatively with other children and make and keep friends. (Tr. 241). In Section II, Ms. Royse elaborated that Claimant sometimes prefers to work alone and doesn't seem to have strong friendships. (*Id.*).

Nothing in Ms. Royse's opinion indicates that Claimant's very serious problems in attending and completing tasks cause a greater level of limitation in his ability to interact and relate to others that Ms. Royse failed to delineate in her opinion. On the contrary, Ms. Royse's comment that Claimant "just sometimes prefers to work alone and doesn't seem to have strong friendships" implies that she considered Claimant's serious limitations in the ability to complete tasks when evaluating his Section II limitations with interacting and relating to others. (Tr. 241). And while ALJ Pickett found Ms. Royse's opinion persuasive, he imposed greater limitations based on additional relevant evidence in the record. For these reasons, the Court finds no discrepancy in the ALJ's evaluation of Ms. Royse's opinion and, therefore, no resulting error.

## IV. Recommendation

Because the ALJ's decision is supported by substantial evidence in the record and comports with the applicable regulations, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

Regina S. Edwards, Magistrate Judge
United States District Court

January 8, 2024

12

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. '' 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:         Counsel of Record